## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JAMISUE BOGGESS,**

        **Plaintiff,**

**v.**                                    **CASE NO. 8:06-CV-2245-T-27EAJ**

**THE SCHOOL BOARD OF SARASOTA
COUNTY,** a public body; **GARY W. NORRIS**,
Superintendent of Schools in his official and
individual capacities; **SCOTT J. LEMPE**;
**ANGELA ALEXANDER**; and **LA SHAWN
HOUSTON,** in their individual capacities,

        **Defendants.**

_____/

### REPORT AND RECOMMENDATION

      This cause comes before the Court on **Defendant School Board, Norris, and Lempe's Motion to Dismiss** (Dkt. 15), **Plaintiff's Response in Opposition to Defendant's Motion to Dismiss** (Dkt. 19), **Defendant Alexander and Houston's Motion to Dismiss** (Dkt. 16) and **Plaintiff's Response in Opposition to Defendant's Motion to Dismiss** (Dkt. 20).   These matters have been referred by the District Judge for a report and recommendation (Dkt. 26).

## I.    Background Facts

      The amended complaint reflects that Plaintiff is a white teacher who has been employed by the Sarasota County School Board for approximately nineteen years as an Exceptional Student Education ("ESE") teacher at Venice High School ("VHS") (Dkt. 14, p. 2).   In addition, Plaintiff served as the ESE Department Chair at VHS for fifteen years, a position to which she was re-appointed every two years.   In early 2005, Defendant Alexander, an African-American woman, was hired to fill a teaching position at VHS starting in August 2005 (id. at p. 3).   According to Plaintiff,

she encouraged Alexander to accept the teaching position and was later instrumental in getting Alexander appointed as a liaison to the ESE Department (id. at pp. 3-4).

Plaintiff asserts that she and Alexander worked well together until March 2006, when a disagreement regarding changes made to students' schedules by Defendants Alexander and Houston "created some friction" between them (id. at pp. 4-5). Houston, who is African-American, was at that time a Vice Principal at VHS and Plaintiff's supervisor (id. at p. 3). Thereafter, in April 2006, Alexander filed a formal complaint against Plaintiff, alleging specific instances of race discrimination going back several months (id. at p. 5). Plaintiff contends that Houston assisted Alexander in drafting her complaint, that Alexander's complaint specifically asked that Plaintiff be transferred from VHS, and that Alexander be appointed Department Chair (id.). In addition, Plaintiff claims that the allegations in Alexander's complaint were "paranoid fabrications and exaggerations" intended to falsely portray Plaintiff as a racist so that she would be removed from VHS, thus allowing Alexander to take over her job (id.).

An investigation by two non-party employees of the School Board began on April 12, 2006. Plaintiff alleges that the investigation was flawed because, among other things, the individuals conducting the investigation were improperly trained, witness interviews were not verified or recorded, and the conclusions reached by the investigators were not supported by the evidence (id. at p. 6). Plaintiff was placed on administrative leave on April 23, 2006, which she claims seriously stigmatized her (id. at p. 7). Following the investigation, Defendant Norris, the Superintendent of Schools for Sarasota County, recommended that the School Board discipline Plaintiff with a five-day suspension, which the School Board approved in December 2006 (id.). Soon after, Plaintiff was notified by Defendant Lempe, the School Board's Director of Human Resources, that she was being

transferred to an elementary school for students with behavior problems for the remainder of the school year.  Plaintiff asserts that she filed a grievance opposing these disciplinary actions, but that her grievance was denied.[1]  Plaintiff also claims that she received notice that the complaint was being referred to the Department of Education Standards Committee for an ethics violation (id. at p. 8).[2]

During the summer of 2006, Plaintiff applied for several positions within the school system for which she asserts she was qualified and had significant seniority, but her requests were denied and she was assigned to an elementary school twenty-three miles from her home (id.).  Plaintiff further alleges that during this same time period she was denied membership in the teacher's union and that this denial resulted from the stigma associated with the complaint and improper disciplinary actions of the Defendants (id.).

Plaintiff filed a five-count complaint on December 6, 2006, setting forth various constitutional claims against the School Board, Norris, and Lempe and claims of tortious interference and slander/libel against Alexander and Houston (Dkt. 1).  In response, Defendants filed two motions to dismiss (Dkts. 9, 10).  Thereafter, on February 28, 2007, Plaintiff filed an amended complaint that substituted three different claims against Defendants School Board, Norris, and Lempe, but retained the same counts against Alexander and Houston (Dkt. 14).  Defendants again filed two motions to dismiss, one addressing Counts I–III, and the other dealing with Counts IV–V

---

[1]Plaintiff provides no specifics regarding this grievance process, other than a brief reference to the fact that she requested an opportunity to cross-examine Alexander during the process, nor does she state the reasons given for the denial (Dkt. 14, pp. 6-7).

[2]No further information has been given indicating whether this referral to the Standards Commission was, in fact, made.

(Dkts. 15, 16).  The original motions to dismiss were denied as moot after the filing of the amended complaint (Dkts. 18, 21).

The first of the two current motions to dismiss, filed by the Sarasota School Board, Superintendent Norris, and H.R. Director Lempe, addresses Plaintiff's claims of impairment of contract on the basis of race (Count I), defamation (Count II), and negligent training (Count III). Defendants request dismissal of these claims on the basis that they do not state a claim for which relief can be granted (Counts I-III), they have not been pled with the requisite specificity (Count I), and they are barred by the doctrine of sovereign immunity (Counts II-III).  In the second motion to dismiss, Defendants Alexander and Houston request that the state law claims in Counts IV and V of the complaint be dismissed because there is no common nucleus of operative fact to support supplemental jurisdiction under 28 U.S.C. § 1367, and because the claims fail to state a cause of action upon which relief can be granted.

## II.    <u>Standard of Review</u>

When considering a Rule 12(b)(6) motion to dismiss, a court must accept the allegations in the complaint as true and construe them in a light most favorable to the plaintiff.  <u>Kirby v. Siegelman</u>, 195 F.3d 1285, 1289 (11th Cir. 1999) (citation omitted).  To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest.  <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002) (citation omitted).  Until the recent Supreme Court decision in  <u>Bell Atlantic Corp. v. Twombly</u>,  550 U.S. __, 127 S. Ct. 1955 (2007), courts routinely followed the rule that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  However, pursuant to Twombly, which abrogated

Conley, to survive a motion to dismiss, a plaintiff's complaint must include "enough facts to state

a claim to relief that is plausible on its face."  Twombly, 127 S. Ct. at 1974.  Thus, "a plaintiff's

obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-

65.  Dismissal of a complaint is warranted if, assuming the truth of the factual allegations of the

plaintiff's complaint, there is a dispositive legal issue which precludes relief.  Neitzke v. Williams,

490 U.S. 319, 326 (1989) (citations omitted).

**III.   Discussion**

       A.     Count I – Impairment of Contract

Plaintiff asserts that the School Board, Norris, and Lempe's actions of suspending her and

reassigning her to another school without legal justification impaired Plaintiff's rights under her

contract with the Board "and her enjoyment of the benefits, privileges, terms and conditions of the

contract, because of Plaintiff's race" (Dkt. 14, pp. 9-10).  Count I of Plaintiff's complaint does not

specify the statutory basis for this claim, although the jurisdictional statement references 42 U.S.C.

§ 1981 (id. at p. 1).  Defendants request that this count be dismissed because Section 1981 itself

provides no cause of action against state actors for vindication of contractual rights (Dkt. 15, p. 4).

Plaintiff's response does not address this argument, other than to confirm that she is alleging a

violation of Section 1981 (Dkt. 19, p. 1).

Section 1981(a) provides that all persons within the United States shall enjoy equal rights

to make and enforce contracts.  Although Section 1981(a) provides a substantive right to protection

from interference with contracts on the basis of race, it does not itself provide a remedy for such

violations.  Butts v. County of Volusia, 222 F.3d 891, 894 (11th Cir. 2000).  42 U.S.C. § 1983 was enacted by Congress to provide the remedial scheme for violations of Section 1981, and that statute provides the sole cause of action for such violations.  Id. at 892, 894.  Therefore, Count I states no claim for relief.  However, Plaintiff should be granted leave to amend her current complaint to reference the appropriate federal remedial statute, since it appears that this deficiency was merely an oversight by Plaintiff and can be easily cured.

Defendants also argue that, even if Count I were properly brought under both Sections 1981 and 1983, Plaintiff has failed to plead the heightened specificity required for civil rights claims that implicate qualified immunity (Dkt. 15, pp. 4-5).  Plaintiff responds that claims for employment discrimination pursuant to Section 1981 "must contain only a short and plain statement of the claim showing that the pleader is entitled to relief" and cites to cases from the Seventh and Ninth Circuits (Dkt. 19, p. 1-2).  However, this circuit has clearly established a heightened pleading requirement for civil rights cases that implicate qualified immunity.  Swann v. S. Health Partners, Inc., 388 F.3d 834, 838 (11th Cir. 2004); Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003).  Therefore, Defendants' argument has merit.  If Plaintiff is granted leave to amend the complaint for a second time, the amended complaint must set forth specific allegations of conduct by the individual defendants that show that a clearly established constitutional right has been violated.  See Dalrymple, 334 F.3d at 994-96 (discussing what must be included in a complaint that implicates qualified immunity to survive a motion to dismiss).

B.    Count II – Defamation

Count II alleges that the School Board, Norris, and Lempe defamed Plaintiff by assembling the documents provided by Alexander, concluding in writing that Alexander's allegations were true,

6

and then publishing the entire contents of the investigation file by placing it in Plaintiff's personnel file (Dkt. 14, p. 11).  Plaintiff further claims that Defendants published the false and defamatory materials "with malice or reckless disregard for their truth or falsehood" (id.).

Defendants argue that sovereign immunity bars this claim against the School Board and Norris in his official capacity and that Norris and Lempe in their individual capacities enjoy absolute immunity from suit for defamation based on communications made within the scope of their employment (Dkt. 15, pp. 7-8).  In addition, Defendants point out that Florida law requires public officials to file official records and no cause of action is recognized for doing so (id. at p. 7).  Plaintiff counters that whether or not Norris and Lempe are "public officials" is a factual issue that cannot be resolved on a motion to dismiss (Dkt. 19, p. 2).  Plaintiff also points out that the existence of a Florida law requiring Defendants to file certain material does not overcome the fact that the information was "published to the world" (id.).

Pursuant to Article 10, Section 13 of the Florida Constitution and Florida Statutes Section 768.28, the State of Florida and its agencies have waived sovereign immunity from tort actions brought in its own courts, subject to certain limitations.  However, Section 768.28(9)(a) provides that a state agency retains immunity for acts or omissions of its employee that are taken outside the course and scope of employment, or that are committed in "bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  Defendants argue that the School Board and Superintendent Norris in his official capacity have statutory immunity because the School Board is an agency of the State for purposes of Section 768.28(9)(a), and because Plaintiff's complaint alleges that Defendants published the false and defamatory statements "with malice or reckless disregard for their truth or falsehood" (Dkt. 15, pp.

6-7).

In applying Section 768.28(9)(a) on a motion to dismiss, Florida courts look to see whether the face of the complaint alleges bad faith or malicious purpose on the part of the governmental actor. Medberry v. McCallister, 937 So. 2d 808, 814 (Fla. 1st DCA 2006); Rudloe v. Karl, 899 So. 2d 1161, 1164 (Fla. 1st DCA 2005). Pleading malice in a defamation action will bar recovery against a state agency pursuant to sovereign immunity under 768.28(9)(a). Rudloe, 899 So. 2d at 1164 n. 2. Further, as Defendants point out, both the School Board and its Superintendent have been found to be agencies of the State of Florida for purposes of Section 768.28. Hollis v. Sch. Bd. of Leon County, 384 So. 2d 661, 664 (Fla. 1st DCA 1980). Consequently, because Plaintiff has alleged that Defendants placed false statements in the public record with "malice or reckless disregard" for their truth or falsity, Plaintiff's claim against the School Board and Norris in his official capacity is barred by sovereign immunity under Section 768.28(9)(a).

The defamation claims against Norris and Lempe in their individual capacities are likewise subject to dismissal because under Florida law public employees enjoy absolute immunity from suit for defamation for statements made as part of their duties. City of Miami v. Wardlow, 403 So. 2d 414, 416 (Fla. 1981); see also Marshall v. City of Cape Coral, 797 F.2d 1555, 1561-62 (11th Cir. 1986) (citations omitted). The rule was developed to protect government officials whose duties required them to explain to the public the reasons for their decisions or policies. Wardlow, 403 So. 2d at 416. Originally, the protection was afforded only to high-ranking officials, but over time, courts began focusing less on the rank of the official and more on the nature of the employee's duties. Id. Currently, "the controlling factor in deciding whether a public employee is absolutely immune . . . is whether the communication was within the scope of the officer's duties." Id.

8

Certainly it is within the scope of the duties of the Superintendent and the Human Resources Director of the School Board to investigate complaints of race discrimination made against employees and to incorporate all documents pertinent to that investigation in the employee's file. Plaintiff's amended complaint admits that "[a]t all times relevant to the allegations herein" Norris and Lempe were acting "within the course and scope of [their] employment" (Dkt. 14, pp. 2-3). Therefore, Norris and Lempe have no individual liability for the communications contained within Plaintiff's investigative file.

Plaintiff argues that there is a factual dispute regarding Norris and Lempe's status as "public officials" and cites to two Florida cases for "factors to be considered" in determining public official status (Dkt. 19, p. 2). These cases are not on point, however, because they involve an individual's status as "public official" for purposes of determining whether malice must be proven in a defamation action and whether an individual is entitled to reimbursement of attorney's fees. <u>See Leon County v. Stephen S. Dobson, III, P.A.</u>, 917 So. 2d 278, 279 (Fla. 1st DCA 2005); <u>Wilkinson v. Fla. Adult Care Ass'n, Inc.</u>, 450 So. 2d 1168, 1172-73 (Fla. 2d DCA 1984). In contrast, the issue here involves immunity from defamation actions for public employees. Defendants have cited to Florida law that establishes the status of the School Board and its Superintendent as agencies of the State for immunity purposes. <u>See Hollis</u>, 384 So. 2d at 664 (pointing out that both the School Board and the Superintendent are constitutional officers and are elected by the people, and thus are integral parts of the government). Thus, there is no factual question to be resolved regarding Norris and Lempe's individual immunity from Plaintiff's claim of defamation. For these reasons, it is recommended that Count II be dismissed in its entirety.

C.      Count III – Negligent Training

Count III contends that Defendants Norris, Lempe, and the School Board were negligent in their training of the two employees who investigated the charge of race discrimination against Plaintiff, directly resulting in a faulty investigation that damaged the Plaintiff (Dkt. 14, p. 12). Defendants argue that these claims are also barred by sovereign immunity because "decisions as to how to train public employees are discretionary decisions that are protected by sovereign immunity" (Dkt. 15, p. 9 (citing Lewis v. City of St. Petersburg, 260 F.3d 1260, 1266 (11th Cir. 2001) (recognizing a common law exception to Florida's statutory waiver of sovereign immunity for actions of a governmental agency that involve "discretionary" functions)). The Eleventh Circuit has applied this exception in the context of negligent training to hold that decisions concerning "how to train" employees and "what subject matter to include in the training" are clearly exercises of governmental discretion and are therefore protected by sovereign immunity. Lewis, 260 F.3d at 1266. However, claims of negligence in the implementation of a training program are not afforded sovereign immunity. See Mercado v. City of Orlando, 407 F.3d 1152, 1162 (11th Cir. 2005).

Plaintiff claims that her injuries are a result of Defendant School Board's "policy and custom" of failing to adequately train its employees "in the proper techniques for investigation of complaints of race discrimination" (Dkt. 14, p. 9). Such allegations clearly challenge the School Board's decisions regarding the content of its training program, not the way training was implemented in a particular instance. Consequently, these allegations of negligent training against the School Board and Norris in his official capacity are barred by sovereign immunity.

The negligent training claims against Norris and Lempe in their individual capacities are also barred because Plaintiff has admitted that Norris and Lempe were "at all times relevant" acting within the course and scope of their employment (id. at pp. 2-3). As already discussed, Florida

Statutes Section 768.2(9)(a) bars negligence claims against public employees for actions taken within the scope of their employment.  In addition, Plaintiff's amended complaint does not allege specific conduct on the part of Norris or Lempe that shows their involvement in the alleged improper training of school board investigators, and thus fails in that respect as well.  In her response to the motion to dismiss, Plaintiff has requested leave to amend her complaint to include more specific allegations regarding Norris and Lempe (Dkt. 19, p. 2), but such an amendment would be pointless in light of a finding of statutory immunity.  It is therefore recommended that Count III be dismissed.

D.    Count IV – Tortious Interference

Count IV is brought against Defendants Alexander and Houston in their individual capacities, and alleges that Alexander and Houston intentionally conspired to interfere with Plaintiff's "advantageous relationship" with the School Board by "bringing false charges of discrimination" against Plaintiff for the purpose of having her removed from her position at VHS (Dkt. 14, p. 13).  Defendants Alexander and Houston request that this state law claim be dismissed for lack of subject matter jurisdiction because it does not share a common nucleus of operative fact with the federal claim brought under 28 U.S.C. § 1981 (Dkt. 16, pp. 4-6).  In addition, defendants allege a failure to state a claim upon which relief can be granted because Plaintiff has failed to "plead facts and circumstances that create liability on the part of Alexander and Houston" (id. at p. 6).

Plaintiff asserts that this court has federal supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367 (Dkt. 14, p. 1).  Section 1367(a) authorizes federal courts to hear supplemental state law claims that "arise out of a common nucleus of operative fact with a substantial federal claim." Parker v. Scrap Metal Processors, 468 F.3d 733, 742-43 (11th Cir. 2006)

11

(citations omitted).  Defendants respond that the facts and circumstances giving rise to Plaintiff's claim of impairment of contract "have absolutely no relation to" the facts necessary to prove Plaintiff's claim of tortious interference with an advantageous relationship (Dkt. 16, p. 5). Defendants' argument is not persuasive.

All of the counts in Plaintiff's amended complaint derive from the same core of operative facts: the investigation and disciplinary actions undertaken by the School Board and its officers in response to Alexander's complaint of race discrimination.  Moreover, the facts alleged against Alexander and Houston in Count IV – that they conspired to file false charges against Plaintiff – gave rise to the contractual impairment alleged in Count I and thus the same evidence is necessary in deciding both claims.   Consequently, there is a sufficient nexus between the state and federal claims to support federal supplemental jurisdiction over the state law claims contained in Count IV.

Although there currently is no "substantial federal claim" on which to base supplemental jurisdiction because the relief requested by Plaintiff in Count I is not available under the federal statute cited, it has been recommended that the court grant Plaintiff leave to amend her complaint to  remedy this deficiency.  See supra, Part III(A).   Assuming Plaintiff does this, a basis for supplemental jurisdiction would exist.

Defendants' second argument for dismissal of Count IV is also faulty.  Plaintiff's amended complaint sets forth "enough facts to state a claim to relief that is plausible on its face," which is all that is required under Twombly.  127 S. Ct. at 1974.  In support of their motion to dismiss, Defendants assert that Florida law recognizes two distinct causes of action for tortious interference, one based upon a contractual relationship and another based on an advantageous business relationship, and that Plaintiff has failed to establish which cause of action is being asserted (Dkt.

16, p. 6).

Under Florida law, the elements of tortious interference with an advantageous business relationship are: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985). The allegations in Plaintiff's amended complaint are sufficient to support a claim for tortious interference with a business relationship. Defendants worked with Plaintiff at VHS and therefore knew of the business relationship, and Plaintiff has alleged that Defendants intentionally filed a false complaint against Plaintiff in order to get her removed from her position at VHS. The complaint also states that Plaintiff was under contract with the School Board, although that is not a requirement for this cause of action. Thus, Plaintiff has sufficiently pled the first three elements of a claim of tortious interference to withstand a motion to dismiss.

Regarding the damages element, Defendants contend that liability has not been established because Plaintiff's amended complaint does not indicate any change in her contractual relationship with the School Board (Dkt. 16, pp. 6-7). However, the contract, if there is one, is not the focus in a suit claiming tortious interference with an advantageous business relationship. Instead, liability arises from damage to the plaintiff that results from a breach of the business relationship. Here, Plaintiff's relationship with the School Board involved a fifteen-year position as ESE Department Chair at VHS. Thus, Plaintiff's assertions that she was suspended, demoted, and transferred to an elementary school some distance from her home are sufficient allegations of damages to survive a motion to dismiss the claim of tortious interference. Therefore, it is recommended that Plaintiff be

permitted to proceed with Count IV of her claim.

           E.       Count V – Slander/Libel

Count V asserts that Defendant Alexander defamed Plaintiff by knowingly publishing false allegations of race discrimination against Plaintiff which resulted in Plaintiff's suspension, demotion, transfer and other damages (Dkt. 14, p. 14).  Plaintiff further alleges that Alexander published these false and defamatory charges with actual malice for the purpose of removing Plaintiff from VHS so that Alexander could take over her position (id.).  Defendant contends that Plaintiff's claim for slander/libel should be dismissed because this court does not have federal supplemental jurisdiction over this state law claim and because Alexander enjoys absolute immunity from defamation for statements made within the scope of her employment (Dkt. 16, pp. 2, 7).

Plaintiff's defamation claim arises from the same nucleus of operative fact that supports the federal law claim stated in Count I, and thus this court has the power to exercise supplemental jurisdiction over the state law claim.  Consequently, Count V need not be dismissed on jurisdictional grounds.

As stated previously, Florida law protects certain communications of public employees from defamation actions, but only if the alleged defamatory statements were made pursuant to the employee's job duties.  Wardlow, 403 So. 2d at 416.  Although public employees are afforded the right to report legitimate discriminatory behavior by their supervisors, this right can in no way be characterized as a job "duty."  Thus, the allegations in Count V are sufficient to survive a motion to dismiss for failure to state a claim.  It is therefore recommended that Defendant's motion to dismiss Count V be denied.

IV.    **Summary**

For the foregoing reasons, it is recommended that Defendants' motions to dismiss be granted in part and denied in part.  It is recommended that Count I (impairment of contract on the basis of race) be dismissed with leave to amend the Section 1981 claim to reference the proper federal remedial statute, 28 U.S.C. § 1983, and to meet the heightened pleading requirements for civil rights cases that implicate qualified immunity.  It is further recommended that Count II (defamation) and Count III (negligent training) be dismissed with prejudice because Defendants School Board, Norris, and Lempe are entitled to immunity from such claims.

Count IV (tortious interference) and Count V (slander/libel) sufficiently state claims for relief against Defendants Houston and Alexander, and it is therefore recommended that Defendants' request for dismissal as to these claims be denied.

DATED: FEBRUARY 5, 2008

ELIZABETH A JENKINS
United States Magistrate Judge

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.  28 U.S.C. § 636(b)(1).